The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The parties have shown good ground to reconsider the evidence and the Full Commission accordingly amends the prior Opinion and Award with regard to plaintiffs average weekly wage, penalties and certain minor modifications.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, as
 STIPULATIONS
1. The Industrial Commission has jurisdiction of this claim.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The employee-employer relationship existed at the time of the incident.
4. Plaintiff suffered an accident on April 12, 1997, arising out of and in the course of her employment with defendant-employer.
5. Defendant-employer did not have workers compensation insurance on April 12, 1997.
6. Stipulated Exhibit #1 — Plaintiffs medical records — 64 pages.
 ***********
Additional contentions and medical records were submitted by plaintiff to the Deputy Commissioner, dated May 22, 1999. The evidentiary record in this matter was closed on May 19, 1999, and therefore, neither the contentions nor the additional medical records were allowed into the record for purposes of the Deputy Commissioners decision. The Full Commission adopts the Deputy Commissioners evidentiary ruling and accordingly has not considered the May 22, 1999 submission in this Opinion and Award. However, this submission may be considered on remand for an additional evidentiary hearing regarding the issue of a change of condition.
 ***********
Based upon all of the evidence of record and the findings of fact of the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-three years old, had a high school diploma and had taken courses in business administration at community colleges. Her job experience includes employment in cleaning, painting and upholstery and in the fast food industry.
2. Plaintiff initially began working with defendant-employer in February 1995 cleaning bathrooms and grounds of racetracks. She worked until November 1995, averaging forty hours per week at $4.25 to $5.25 per hour.
3. Plaintiff began working for the defendant-employer again in February 1997 at which time she worked for three weeks, five days per week, twenty to thirty hours each week at a pay rate of $4.75 per hour. Plaintiffs job duties were similar to those she had in 1995, which included mopping, sweeping, picking up paper, with a lot of stooping, squatting, bending and walking.
4. In April 1997, defendant-employer secured a contract at Bristol Motor Speedway in Bristol, Tennessee where plaintiff worked for $8.00 per hour. Also, plaintiff began work at the Warthog Stadium as a supervisor beginning in April 1997 averaging 30 hours per week at a pay rate of $6.00 per hour. The Warthog schedule included games every other week from the first weekend in April 1997 until the end of August 1997.
5. On April 12, 1997, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer when plaintiff was riding in a golf cart driven by a co-worker. Plaintiffs left leg struck a steel guardrail at the stadium when the co-worker sharply rounded a curve. Plaintiff immediately notified Thomas Brown, owner of Material Handling Consultants, of her accident and that she was experiencing left knee, leg and hip pain.
6. Despite her injuries, plaintiff continued working with defendant-employer through July 3, 1997. At the time plaintiff stopped working, she was unable to continue performing her job duties due to left knee pain.
7. Plaintiff presented for treatment of her left knee to the emergency room on April 17, 1997 and to an urgent care center in early May 1997 and then again to the emergency room. Plaintiff complained of pain in her left knee, hip and lower back. She was given prescription medication and referred to an orthopedist.
8. On May 13, 1997, plaintiff was examined by Dr. Bill Wheatley, an orthopedist, who diagnosed her with a left lateral meniscus tear in the anterior horn of her knee, gave her prescription medication and referred her to physical therapy. Upon further evaluation by Dr. Wheatley, plaintiff was found to have left trochanteric bursitis as well. Additionally, plaintiff continued to complain of pain radiating from her left hip area with locking of the knee.
9. On August 22, 1997, plaintiff underwent a left knee arthroscopy debridement for anterior synovitis, as well as Grade II chondromalacia at the lateral femoral condyle. Following the surgery plaintiff had relief of her pain symptoms and overall improvement of her condition.
10. By December 11, 1997, plaintiff was experiencing a minimal amount of tenderness in her left knee with occasional locking. She continued taking prescription medications for pain and had not returned to work. Plaintiffs work restrictions since the injury of April 12, 1997 included no squatting, deep knee bending or lifting with her lower extremities greater than twenty-five (25) pounds.
11. Beginning in November 1997, defendant-employer began payments to plaintiff in the amount of $135.96 every two weeks for her time out of work. It is not clear from the evidence of record whether these payments were made consistently or how long they continued.
12. For the purposes of determining plaintiffs average weekly wage, the greater weight of the evidence indicates that prior to plaintiffs accident she worked for defendant-employer for approximately 3 weeks in February 1997, March 1997 and approximately 2 weeks in April 1997 or a total of 63 days in the year prior to her injury by accident. Plaintiffs gross earnings for 1997 were $1,705.25. However, $223.25 of this amount was earned after the injury by accident. Therefore, the appropriate amount of earnings to be used in determining plaintiffs average weekly wage is $1,482.00. Accordingly, plaintiffs average weekly wage is $164.67 yielding a weekly compensation rate of $109.78.
13. Notwithstanding the fact that no expert testimony was taken in this matter, sufficient medical evidence exists in the record to establish a causal connection between plaintiffs injury by accident of April 12, 1997 and the resulting left knee and left hip conditions. Along with plaintiffs credible testimony regarding her onset of pain and the immediate medical treatment she received thereafter, Dr. Wheatley refers to a "work-related injury throughout his medical notes, and specifically, in his medical note of May 4, 1998, he relates the left hip and knee problems to plaintiffs work related accident of April 12, 1997.
14. By August 27, 1998, plaintiff was treating with Dr. Hunter, at which time she reached maximum medical improvement and was released with a fifteen percent (15%) permanent partial impairment of the left knee. No work restrictions are noted. There is no evidence in the record to establish that plaintiff made any reasonable effort to secure employment with defendant-employer or any other employer following this release other than that plaintiff testified at the hearing before the Deputy Commissioner that she attempted to return to work with defendant-employer in January 1998, but due to her injuries, was unable to complete the job duties based on their strenuous nature.
15. From July 4, 1997 through August 27, 1998, plaintiff was unable to earn any wages in any employment as a result of her work-related injuries. Plaintiff did participate in some painting activities following her injury, however, this was performed at her landlords request in lieu of a deposit for rent and rent payments.
16. At the time of plaintiffs injury by accident on April 12, 1997, defendant-employer did not carry workers compensation insurance as required by G.S. 97-93, thereby subjecting defendant-employer to sanctions, including criminal and civil penalties. However, defendant-employer asserts that it has since obtained workers compensation insurance and has been willing and made efforts to make some payments to plaintiff. Furthermore, the Commission has an interest in assuring that defendant-employer is solvent in order that plaintiff receive all benefits to which she is entitled. Accordingly, an amount of $500.00 of sanctions and penalties is reasonable at this time.
17. Plaintiff was formally represented by Travis Simpson, Esquire until such time as he was allowed to withdraw by Order dated April 21, 1999. Attorney Simpson and Attorney Roderick Todd McIver represented plaintiff at the hearing before the Deputy Commissioner in this matter and are entitled to attorneys fees for their time and effort. Plaintiff has expressed dissatisfaction with Attorney Simpsons legal services; however, there is no indication that it is unreasonable to allow an attorneys fee for Attorney Simpson as well as Attorney McIver and plaintiffs current attorney Mr. Turman.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On April 12, 1997, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer, resulting in injuries to her left knee and left hip. G.S. 97-2(6); Tickle v. Insulation Co., 8 N.C. App. 5, 173 S.E.2d 491
(1970).
2. Based on the evidence in the record, and utilizing a method of computation that most nearly approximates the amount which plaintiff would be earning were it not for her injuries, plaintiffs average weekly wage is $164.67 yielding a weekly compensation rate of $109.78. G.S.97-2(5).
3. As a result of her compensable injury on April 12, 1997, plaintiff is entitled to temporary total disability compensation at the rate of $109.78 per week, from July 4, 1997 through August 27, 1998. Defendant, however, is entitled to a credit for the amount of compensation paid to plaintiff beginning in November 1997. Defendant has the burden of proof with regard to the amount of this credit. Furthermore, plaintiff is entitled to a 10% late payment fee for any weekly payments or portions thereof, which have been paid late within the definition of G.S. 97-18. G.S. 97-29; G.S. 97-42; G.S. 97-18.
4. As a result of her compensable injury on April 12, 1997, plaintiff sustained a fifteen percent (15%) permanent partial disability to her left knee and is entitled to permanent partial disability compensation for the same, if she so elects. G.S.97-31.
5. Plaintiff is entitled to payment of all reasonably necessary medical expenses incurred by plaintiff as a result of her compensable injury on April 12, 1997 which tend to effect a cure, provide relief or lessen the period of disability, subject to the limitations of G.S. 97-25.1. G.S.97-25.
6. Since at the time of plaintiffs injury by accident on April 12, 1997, defendant-employer was non-insured for purposes of workers compensation and therefore in violation of G.S. 97-93, the amount of $500.00 of sanctions and penalties is assessed against defendant-employer at this time. This nominal amount of sanctions shall remain in effect as long as defendant-employer complies with the Award contained herein and maintains workers compensation insurance as required by law. However, any further violations or nonpayment will subject defendant-employer to greater sanctions and penalties as allowed by law. G.S. 97-93
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant shall pay all temporary total disability compensation to plaintiff at the rate of $109.78 per week from July 4, 1997 through August 27, 1998 and any applicable late payment penalties. Furthermore, if plaintiff elects, defendant shall pay to plaintiff 30 weeks of permanent partial disability for her fifteen percent (15%) permanent partial impairment to her left knee. Defendant, however, is entitled to a credit for the amount of compensation paid to plaintiff beginning in November 1997. Such amount shall be paid to plaintiff in a lump sum, subject to an attorney fee approved in Paragraph 3.
2. Defendant shall pay all reasonably necessary medical expenses incurred by plaintiff as a result of her compensable injury on April 12, 1997, which tend to effect a cure, provide relief or lessen the period of disability when bills for the same have been submitted in accordance with approved Industrial Commission procedure.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff is approved to be paid jointly to Attorney Turman, Attorney Simpson and Attorney McIver. The apportionment of these fees shall be determined by agreement between the attorneys.
4. Defendant shall pay $500.00 in sanctions and penalties in accordance with G.S. 97-93. This nominal amount of sanctions shall remain in effect as long as defendant-employer complies with the Award contained herein and maintains workers compensation insurance as required by law. However, any further violations or nonpayment will subject defendant-employer to greater sanctions and penalties as allowed by law.
5. Defendant shall pay the costs due the Commission.
 ORDER
This matter is hereby Remanded to be set before a Deputy Commissioner for a full evidentiary hearing including the opportunity for cross-examination for the determination of the issue of change of condition and additional benefits raised by the medical records which were excluded from the evidentiary record.
This the ___ day of May 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER